CHESTER A. COGBURN AND WIFE, RUBY D. COGBURN AND WESLEY VRABEL AND WIFE, MYRTLE VRABEL v. JOSEPH E. HOLNESS, JR., OF PALM BEACH COUNTY, FLORIDA

No. 7628SC1045

(Filed 19 October 1977)

1. **Dedication § 2.1— golf course—use by subdivision lot owners—insufficient acts of dedication**

    There was no valid dedication of rights in a golf course tract to the owners of lots in a subdivision where the plats referred to in the form deeds to the lot

owners do not show and contain no reference to a golf course, and there is no language expressly dedicating the golf course to the use of the lot owners in either the form deeds or the plats.

**2. Dedication § 2.1— golf course—use by subdivision lot owners—booklet publicizing subdivision—no dedication**

A booklet publicizing a subdivision which was distributed by the subdivision developer did not effectuate a dedication of rights in a golf course tract to the owners of lots in the subdivision where the booklet was never placed on public record and was not referred to in recorded plats of the subdivision or the deeds to purchasers of lots in the subdivision.

**3. Deeds § 20— golf course tract—insufficiency of language to create restriction on use**

Language in a booklet distributed by a subdivision developer which related to the developer's intent to transfer a golf course tract to owners of lots in the subdivision was insufficient to create a restriction on the use of such tract where it recited only that a meeting of lot owners may be held to consider the disposition of the golf course and that "no definite plan" for the transfer of the tract would be decided upon until a mutually agreeable understanding was effected by the lot owners, and no plan of transfer was ever proposed or mutually agreed upon.

**4. Dedication § 2.1; Deeds § 20— golf course tract—subdivision—no dedication of rights—no restriction on use**

There was no dedication of rights in a golf course tract to owners of lots in a subdivision and no creation of a restriction on the use of the tract by deeds which excepted "such rights as may have heretofore been granted . . . relating to the use . . . of the golf course" or by deeds which were made subject to "any outstanding right, privilege or easement in any third party (if there should be any such outstanding right, privilege or easement, which the party of the first part does not admit) to have the property . . . for use as a golf course."

APPEAL by defendant from *Martin (Harry), Judge*. Judgment entered 21 September 1976 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 22 September 1977.

Plaintiffs instituted this action seeking specific performance of a contract entered into by plaintiffs and defendant on 9 September 1974 in which plaintiffs agreed to sell and defendant agreed to purchase, in fee simple and free from all liens and encumbrances, 1.01 acres out of a 46-acre tract situated in the city of Asheville.

Defendant filed answer admitting the existence of the contract but alleging that plaintiffs were unable to convey a good and sufficient title to the land described in the contract for the reason that such land was encumbered by certain restrictions and/or easements appurtenant limiting its use to that of a golf course.

In reply to defendant's allegations, plaintiffs denied that restrictions or easements so limiting the use of the land in question

were effectively created by any of the deeds or other documents constituting plaintiffs' chain of title and as further relief, prayed the court to remove any cloud on plaintiffs' title arising from such restrictions or easements.

The parties stipulated that the court hear and determine the case on the pleadings, certain stipulated facts and authenticated documents and the deposition of plaintiff Wesley Vrabel.

According to plaintiffs' chain of title, which included twenty-four (24) documents authenticated by stipulation of the parties, the land in question was part of a 46-acre tract conveyed with adjoining lands by Asheville School, Inc. to Malvern Hills, Inc. by deed dated May, 1925. In April of 1925, prior to this conveyance, Newton M. Anderson had recorded three plats indicating a proposed subdivision of these lands; in two of these plats is an undefined area marked "golf course." Subsequent to the May, 1925 conveyance, Malvern Hills, Inc. recorded four new plats containing metes and bounds descriptions of the lots and blocks and referring to the property as "Malvern Hills." No mention of a "golf course" appears in the four later plats.

Between May, 1925 and June, 1929, Malvern Hills, Inc. sold one hundred thirteen (113) subdivision lots, all such conveyances referring to the four plats recorded by Malvern Hills, Inc. which make no mention of a "golf course." Each of the one hundred thirteen (113) conveyances was executed on a form deed which contained in part the following language:

> "WHEREAS, the land above described is a part of a boundary of land shown on the plat [one of the four subsequently recorded plats], which said boundary has been divided into parcels or lots, and laid off and designed to be used exclusively for residential purposes except so much thereof as is designated 'Golf Course' . . . ."

In conjunction with the sale of lots in the subdivision, Malvern Hills, Inc. prepared and distributed a booklet publicizing the subdivision and making the following pertinent statements concerning the "club house" and "golf course":

> "DISPOSITION OF GOLF COURSE AND CLUB HOUSE
>
> When two hundred lots shall have been sold in Malvern Hills, or after two years from April 1, 1925, at the option of Malvern Hills, Inc., a meeting of the property owners may be called for the purpose of considering a disposition of the golf

course and club property. It is Mr. Anderson's purpose to transfer these properties to the owners of homesites in Malvern Hills, under due provisions, assuring their continued use by the entire community as a golf property or community part. As to whether this transfer should take the form of a lease or conveyance, and as to the numerous details involved by the arrangement, it is felt that the voice and opinion of the property owners should be heard, and accordingly no definite plan will be proposed until the above mentioned meeting can be held, at which time the interested parties will consult to effect a mutually agreeable understanding and action. Mr. Anderson wishes it clearly understood that he is bound in all good faith to transfer the Club House and golf course substantially without remuneration for their value to the owners and also those who buy in additional areas that may later be developed for residences will have the benefit of this transfer."

In 1929, Malvern Hills, Inc. executed a deed of trust to Central Bank and Trust Company as trustee, conveying among other property the 46-acre tract pertinent to this case and on which, at that time, existed a nine-hole golf course. The deed of trust contained the following language with reference to any alleged limitations on or rights in the use of the 46-acre tract:

"Excepting also such rights as may have heretofore been granted to [prior] purchasers of lots . . . under deeds or contracts from Malvern Hills, Inc., relating to the use and enjoyment of the portion of said hereinabove described land used as a golf course."

This deed of trust was foreclosed in June, 1933 and the property, including the 46-acre golf course, was purchased at public auction by Consolidated Realty Company. The trustee's deed conveying such property recited the same "exception" concerning the golf course as appeared in the deed of trust. Shortly after acquisition of the Malvern Hills, Inc. property, Consolidated Realty executed a deed of trust to Asheville Safe Deposit Company, as trustee, which included a description of the 46-acre tract citing it as "Golf Course Tract." This deed of trust contained no reference to an exception for any rights granted in the use of the golf course.

By deed dated August, 1938, Consolidated Realty conveyed in fee simple the 46-acre tract referred to as the "golf course tract" to Hilliard Green, again making no reference to rights of third persons regarding the use of the land. Green conveyed the "golf course

tract" in September, 1939 to Ralph Overton by deed which recited the following pertinent language:

> "This conveyance is also made subject to any outstanding right, privilege or easement in any third party (if there should be any such outstanding right, privilege or easement, which the party of the first part does not admit) to have the property above described, or any portion thereof, maintained in perpetuity or for any limited period, for use as a golf course."

Approximately one month after the Green to Overton conveyance, certain Malvern Hills property owners and other persons having an interest in the subdivision lots as either trustee, mortgagee or beneficiary, executed an agreement impressing restrictive covenants on the lots for a period of twenty-five (25) years. With reference to use of the golf course tract, the agreement recited:

> "In signing this consent to the changes in the restrictions applying to the Malvern Hills Development the signers hereof do not waive any of their rights, if any, either as owners of the rights, if any, of the lots owned by them have in and to the area shown on the plats of Malvern Hills as a golf course, or the rights, if any, vested in them under and by virtue of certain agreements heretofore executed by previous owners of Malvern Hills and now of record in the Office of the Register of Deeds of Buncombe County, North Carolina. That is to say, the signers hereof reserve all their rights and the rights of their lots, if any, under the original general plan of development of Malvern Hills insofar as the golf course is concerned."

Ralph Overton, then owner of the 46-acre "golf course" tract did not join in this agreement.

In March, 1942, Overton conveyed the golf course tract to L. B. Jackson and R. H. Edney by deed which recited the same language quoted above from the Green to Overton deed. Jackson and Edney conveyed the golf course tract, along with other lands, to plaintiffs Chester Cogburn and wife, Ruby Cogburn, in September, 1944. Their deed also contained the above referred to language (in the Green to Overton deed) regarding any rights of third persons to the use of the golf course tract. Plaintiffs Wesley Vrabel and wife, Myrtle Vrabel came into possession of a one-half (1/2) undivided interest in the golf course tract by virtue of a conveyance of the same from plaintiffs Cogburn in 1945.

Plaintiff Wesley Vrabel's deposition tended to show that from approximately 1925 until 1946 the 46-acre tract was used as a nine-hole golf course. None of the property has been used for golfing purposes since 1946 (over thirty years); but at various times the tract has been planted in corn, used for commercial purposes, condemned in part by the State of North Carolina for highway purposes, and rezoned for business purposes by the city of Asheville.

Finding facts substantially as detailed above, the trial judge concluded that no restrictions or easements appurtenant existed in favor of any third persons with reference to the use of the 46-acre tract or any part thereof; accordingly a judgment granting specific performance to plaintiffs was entered. Defendant appealed to this Court.

*Redmond, Stevens, Loftin & Currie, Professional Association, by John W. Mason and Carl W. Loftin, for the plaintiffs.*

*Long, McClure & Dodd, by Robert B. Long, Jr. and Jeff P. Hunt, for the defendant.*

MARTIN, Judge.

The question posed by this appeal is whether the "golf course tract" is encumbered by any restriction, easement appurtenant, or rights in the Malvern Hills lot owners requiring the golf course tract to be maintained as such. The pertinent language of the documents constituting plaintiffs' chain of title must be interpreted in light of the applicable rules of construction to resolve this matter.

The trial judge made extensive conclusions of law in construing the documents before him and determined that no restriction, dedication, easement or other right in Malvern Hills lot owners has ever existed with respect to the use of the golf course tract. It is defendant's contention that the trial judge erred in this conclusion. We cannot agree with defendant.

[1] Viewing the documents comprising the record before us, we are unable to find a valid dedication of any rights in the golf course tract to lot owners in Malvern Hills Subdivision. We recognize the rule established in *Cleveland Realty Co. v. Hubbs*, 261 N.C. 414, 135 S.E. 2d 30 (1964), a case similar to the instant case, that the sale of lots in a subdivision by deed referring to a recorded plat showing lots, streets, and a golf course, and containing restrictions that the developers were dedicating the golf links and the playground for the use and pleasure of the owners of the lots, is a valid dedication of

the golf course to the purchasers of lots in the subdivision. However, in the instant case, the plats referred to in the form deeds do not show nor even contain a reference to a golf course. Nor is there language expressly dedicating the golf course to the use of the lot owners in either the form deeds or the plats as the court found in the *Cleveland Realty* case.

[2, 3] Defendant further argues that the descriptive booklet distributed by Malvern Hills, Inc. in conjunction with the sale of subdivision lots effectuated a dedication of certain rights in and to the use of the golf course tract, and at the least, created a valid restriction on its use. We must agree with the trial judge's conclusion that the booklet amounted to no more than an attractive advertisement of the subdivision. The booklet was never placed on public record in Buncombe County and was in no way referred to in the form deeds and recorded plats, the instruments determining the legal rights created by conveyances of lots in the subdivision. Moreover, the language in the booklet relating to the disposition of the golf course is vague and ambiguous and thus, unenforceable at law or in equity as a restriction on the use of the same. As was stated by our Supreme Court in *Edney v. Powers*, 224 N.C. 441, 31 S.E. 2d 372 (1944),

> ". . . [T]he universal interpretation . . . of . . . restrictions in deeds has been in favor of the free and untrammeled use of the property and against any restriction upon the use thereof, and that any doubt arising or ambiguity appearing will be resolved against the validity of the restriction upon and in favor of the extended use of the property."

The pertinent language recites only that a meeting of lot owners may be held to consider the disposition of the golf course; and as to any proposed transfer of such property, "no definite plan" would be decided upon until a mutually agreeable understanding was effected by the lot owners. As no plan of transfer was ever proposed or mutually agreed upon, we cannot hold that a valid restriction was created by the language in the booklet.

[4] We are also unable to find any merit in the contention that certain language appearing in the later deeds and deeds of trust constituting plaintiffs' chain of title effectively created a restriction on the use of the golf course tract. We note simply that each such reference to the use of the golf course tract was phrased in the following equivocal terms:

"Excepting . . . such rights as may have heretofore been granted . . . relating to the use . . . [of the] golf course." [Form deeds used by Malvern Hills, Inc.]

". . . subject to any outstanding right, privilege or easement in any third party (if there should be any such outstanding right, privilege or easement, which the party of the first part does not admit) to have the property . . . for use as a golf course." [Green to Overton, Overton to Jackson and Edney, Jackson and Edney to Cogburn deeds]

In view of our interpretation of the plats and form deeds and the booklet, we hold that these later references to the use of the golf course tract are likewise ineffective as a dedication of or restriction on the use thereof.

Accordingly, the judgment entered by the trial judge granting specific performance of the subject contract to plaintiffs is

Affirmed.

Judges PARKER and ARNOLD concur.